```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/24/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
             -against-                                            :  19-CR-862 (VEC)
                                                                  :
JONATHAN GARCIA,                                                  :  OPINION & ORDER
                                    Defendant.                    :
                                                                  :
------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

On June 15, 2023, a jury convicted Jonathan Garcia of (1) racketeering conspiracy in violation of 18 U.S.C. §§ 1962(d) and 1963; (2) murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2; (3) drug conspiracy in violation of 21 U.S.C. §§ 841 and 846; and (4) the use of a firearm in relation to the conspiracy to distribute controlled substances in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)–(iii) and 2. *See* Verdict Form, Dkt. 996; Superseding Indictment (S6), Dkt. 572. Mr. Garcia moved for acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29 on the grounds that the killing of Joshua Flores was justified, and the Government opposed the motion. *See* Def. Mem., Dkt. 1030; Gov. Opp., Dkt. 1038. For the following reasons, Mr. Garcia's motion is DENIED.

## BACKGROUND

On May 18, 2017, Mr. Garcia shot and killed Joshua Flores. Mr. Garcia, then a member of the Woodhaven Mayans tribe of the Latin Kings, had previously been involved in an altercation with members of the Wild Lion City tribe of the Latin Kings. Tr. at 121:1–9, 17.[1] Cooperating witnesses testified that rival Latin Kings, including Wild Lion City member Joshua

---

[1] The trial transcripts are found at docket entries 999, 1001, 1003, and 1005.

Flores, met Mr. Garcia on May 18 intending to "strip" him, or expel him from the Latin Kings, by physically beating him. *Id*. at 96:24–25, 122:15–19. Stripping generally does not involve the use of weapons. *Id*. at 97:14–16.

Mr. Garcia brought a gun and several associates, including his cousin, to the stripping.[2] *Id*. at 103:17–19; 132:12–16. On his way to the meeting spot, he purchased gloves and warned the store owner not to show any surveillance video to the police. *Id*. at 60:8–25. Video surveillance footage showed that, after purchasing the gloves, Mr. Garcia went to the meeting spot and waited for the rival Latin Kings to arrive. Gov. Ex. 710 at 1:18–2:30. After they arrived, Mr. Garcia shook hands and spoke with the rival gang members. *Id.* at 6:12–6:30.

The conversation soon grew violent, however; a rival Latin King ran toward Mr. Garcia and grabbed him. Mr. Garcia then fled. *Id*. at 11:40–11:55. According to Mr. Garcia and cooperating witness Christopher Lum, at some point Mr. Garcia gave the gun to his cousin, who fired a warning shot; the rival Latin Kings fled after the shot was fired. Gov. Ex. 502A at 2:17–2:22; Tr. at 266:12–67:9. Mr. Garcia took the gun from his cousin and fired into the fleeing crowd, striking and killing Mr. Flores. Gov. Ex. 502A at 2:23–2:40; Tr. at 267:10–13. In a recorded call to Jose Casado, a leader of the Latin Kings, Mr. Garcia stated:

> When I gave it to my cousin, my cousin let at least one time in the air, they started running. So they didn't see when I grabbed it . . . . They see when I gave it to my cousin. My cousin let loose — they started running. That's when I grabbed it and I took over.

Gov. Ex. 502A at 2:17–2:40.

Mr. Garcia explained to Mr. Casado that the rival Latin Kings should not have pursued the stripping "knowing that there was a stronger weapon" present, because none of them was

---

[2] Mr. Lum testified, and video surveillance showed, that Mr. Garcia initially stored the gun in the wheel well of a car but retrieved the gun during the altercation with the Wild Lion City group. *See* Tr. at 266:12–14; Gov. Ex. 703B at 1:00–1:25.

armed. *Id*. at 1:23–1:26; *see also* Tr. at 130:18–22. Mr. Garcia further told Mr. Casado that the rival Latin Kings "went running," but one of them was unable to run away. Gov. Ex. 502A at 2:21–2:22; Gov. Ex. 505 at 0:17–0:20 ("Them thirty lions went running. Excuse me, twenty-nine of them went running.").

Dr. Melissa Pasquale Styles, who performed an autopsy on Mr. Flores, testified that the fatal bullet entered Mr. Flores's upper right back and came to rest in the left side of his neck. Tr. at 570:19–71:12. She further testified that the absence of stippling suggested that the shot was fired from a distance, rather than at close range. *Id*. at 568:24–70:14.

## DISCUSSION

### I.   Legal Standard

Rule 29(a) provides that a court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Taylor*, 475 F. App'x 780, 781 (2d Cir. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "'[A] judgment of acquittal' is warranted 'only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (quoting *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004)).

## II. The Evidence Supports a Guilty Verdict on the Murder in Aid of Racketeering Charge

Mr. Garcia argues that he should be acquitted as to the murder in aid of racketeering count because the killing of Mr. Flores was justified.[3] Def. Mem. at 1. For the reasons first discussed during the charge conference and further elaborated below, the Court finds that Mr. Garcia has not met his "heavy burden" of showing that the killing of Mr. Flores was justified. *United States v. Jones*, 335 F.3d 170, 180 (2d Cir. 2003) (internal quotation omitted).

### A. Legal Standard

New York law provides that a defendant's use of deadly force may be justified if he reasonably believes both "that another person is using or is about to use deadly physical force against him, and that it is necessary for him to use deadly physical force to defend himself." *Davis v. Strack*, 270 F.3d 111, 125 (2d Cir. 2001); *see also United States v. Pagett*, No. 21-CR-1632, 2022 WL 2057572, at *2 (2d Cir. June 8, 2022). Physical force is deadly if it "is readily capable of causing death or other serious physical injury." *Pagett*, 2022 WL 2057572, at *2 (quoting N.Y. Penal Law § 10.00(11)).

Even if those criteria are met, however, the use of deadly force is not legally justified if the defendant had the opportunity to retreat with "complete safety as to himself and others," in which case he has a duty to do so. *Strack*, 270 F.3d at 126; *see also Pagett*, 2022 WL 2057572, at *2; N.Y. Penal Law § 35.15(2)(a). The use of deadly force is also not justified if the defendant is the initial aggressor, unless the defendant (1) withdrew from the altercation, (2) communicated the withdrawal, and (3) the defendant was not the first to use or threaten the use of deadly physical force. *See People v. Brown*, 125 N.E.3d 808, 813 (N.Y. 2019); N.Y.

---

[3] Mr. Garcia makes no argument as to why acquittal on any other count would be appropriate. After carefully reviewing the record, the Court finds that the evidence at trial was sufficient to support a verdict of guilty as to the charges of racketeering, drug conspiracy, and use of a firearm in relation to the narcotics conspiracy.

Penal Law § 35.15(1)(b).  "If mere physical force is employed against a defendant, and the defendant responds by employing deadly physical force, the term initial aggressor is properly defined as the first person in the encounter to use deadly physical force." *Pagett*, 2022 WL 2057572, at *2 (quoting *Brown*, 125 N.E.3d at 812).

### B. The Killing of Joshua Flores Was Not Justified

The evidence introduced at trial made plain that Mr. Garcia did not face an imminent threat of deadly force when he shot Mr. Flores.  Mr. Garcia argues that a reasonable person would fear serious bodily injury, or even death, when faced with being stripped from the Latin Kings.  Def. Mem. at 9–12.  Cooperating witnesses, however, credibly testified that stripping generally does not involve the use of deadly force.  *See, e.g.*, Tr. at 97:9–16.

Mr. Garcia argues that stripping sometimes involves deadly force because cooperating witnesses Jose Casado and Heinner Solis testified about slashings of Latin Kings who were stripped, and Mr. Solis further testified about the stabbing of a Latin King who was stripped.  *Id*. at 187:13–88:7; 609:5–10:1.  Neither witness testified, however, that the slashings or stabbing occurred as part of the stripping, and Mr. Casado, who had been part of approximately ten strippings, testified that stripping never involved attempts to kill or guns.  *See id*. at 97:9–16; 609:5–10:1.

Assuming that stripping sometimes involves the use of deadly physical force — despite the significant evidence at trial that stripping generally does not — when viewed in the light most favorable to the Government, the evidence establishes that the attempted stripping of Mr. Garcia did not involve the use or threat of deadly physical force.  While cooperating witness Christopher Nelson testified that Mr. Garcia claimed that the rival Latin Kings swung a machete at him, that claim was not corroborated by the video footage of the altercation and was disputed

by Christopher Lum, an eyewitness. *See id*. at 306:12–14, 493:16–20; Gov. Ex. 702A at 7:15–13:07. The weight of the evidence supports the conclusion that the first use of deadly physical force was the firing of Mr. Garcia's gun. *See* Gov. Ex. 710 at 11:48–11:55.

Accordingly, Mr. Garcia, not Mr. Flores, was the first to use deadly physical force and the initial aggressor. *See Brown*, 125 N.E.3d at 812 (noting that the initial aggressor is the first to use deadly physical force). Because there is no evidence that Mr. Garcia attempted to withdraw from the altercation, the defense of justification is unavailable. *See id*. at 813 (noting that an initial aggressor cannot invoke the justification defense unless, *inter alia*, he withdraws from the altercation).

Even if Mr. Garcia were not the initial aggressor and reasonably believed that he faced deadly physical force when he met the rival Latin Kings, he could not have reasonably believed he faced deadly physical force when he shot and killed Mr. Flores. *See United States v. White*, 552 F.3d 240, 248 (2d Cir. 2009) (noting that the use of deadly force is justified "only for as long as necessary to dispel any threat"). Mr. Flores and the rest of the rival Latin Kings were already fleeing when Mr. Garcia took the gun from his cousin and fired into the retreating crowd. *See* Gov. Ex. 502A at 2:17–2:40. At that time, whatever the risk was at the outset of the encounter, the crowd no longer posed "an immediate, compelling, and direct threat to human life." *White*, 552 F.3d at 248. The evidence at trial did not suggest, for example, that the rival Latin Kings possessed and were likely to use a firearm against Mr. Garcia after having relocated down the street; indeed, Mr. Garcia himself bragged that he held the "stronger weapon." Gov. Ex. 502A at 1:23–1:26.

In short, the evidence at trial establishes that Mr. Garcia could not have reasonably believed that the use of deadly physical force "was necessary to defend himself from the use or

imminent use of deadly physical force" when he shot and killed Mr. Flores. *Pagett*, 2022 WL 2057572, at *2.

Finally, Mr. Garcia had a clear opportunity to make a full retreat once the warning shot was fired and the rival Latin Kings began to flee. Mr. Garcia stood in the middle of an open street, no longer faced with any aggressors, and easily could have retreated with complete safety. *See* Gov. Ex. 710 at 11:48–14:24. Instead, he shot a fleeing Mr. Flores in the back. *See id*. Under these circumstances, "there is no reasonable inference from the record that [his] only available means of avoiding an imminent threat of deadly physical force was firing . . . ." *Bonilla v. Lee*, 35 F. Supp. 3d. 551, 565 (S.D.N.Y. 2014).

## CONCLUSION

For the foregoing reasons, Mr. Garcia's motion for acquittal is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 1029. The parties' sentencing submissions are due on **November 2, 2023**, and Mr. Garcia will be sentenced on **Thursday, November 16, 2023, at 11:00 A.M.** in Courtroom 443 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, 10007. Order, Dkt. 1059.

**SO ORDERED.**

Date:  October 24, 2023                      **VALERIE CAPRONI**
       New York, NY                       **United States District Judge**